Allen Murray Myers, J.
CPL 260.20 provides that, "A defendant must be personally present during the trial of an indictment”.
The issue before me is under what circumstances, if at all, a defendant can waive his presence at trial.
On the morning of April 1, 1977, the case of People v Troy Hicks and Phillip Bermudez was assigned to me for trial in Part 102. The defendants were charged with the robbery of an after-hours club on December 21, 1975. When the case was called in Part 102, the Assistant District Attorney stated: "The People would move this case for trial.” Both defendants, through their respective attorneys, answered that they were ready for trial. The trial was adjourned until 2:15 that afternoon when a Wade hearing was to be held prior to the selection of a jury. Various witnesses were heard on April 1, 5 and 6, in the presence of the defendants, with the defendant Bermudez’ attorney fully participating.
On April 6, 1977, the witness Virginia Magrino was sworn and testified. Her testimony was the most damaging to the defendant, Bermudez. She testified that on the night of the robbery she entered the elevator to go to the club when she recognized the defendant, Bermudez, whom she knew as Phillip. While in the elevator, she realized a robbery was taking place and that Bermudez was one of the participants. She had first been introduced to Bermudez, as Phillip, about two months before the robbery and had seen him about eight times since then at the club. At one time prior to the robbery, he had told her that he had just come out of the hospital. At various times, Phillip had offered her marijuana and had offered to sell her speed. From her testimony, it was apparent that she knew Bermudez and had a strong basis for identifying him. After the cross-examination of Magrino, the court declared a recess from 12 noon to 12:30. When the case was resumed, Bermudez failed to appear and has not appeared since then. He was last seen going toward the coffee shop at 100 Centre Street.
The Assistant District Attorney continued the presentation of witnesses in Bermudez’ absence. He then sought to start the voir dire and try the entire case in the absence of the defendant, Bermudez. Bermudez’ counsel strenuously objected on the ground that Bermudez could not be tried in absentia because the trial had not yet "commenced” and claimed that *611 merely moving a case to trial does not constitute the commencement of a trial.
The Assistant District Attorney offered evidence to show what efforts had been made to find the defendant in order to demonstrate that the defendant’s disappearance was voluntary and constituted a waiver of his constitutional right to be present at the trial; and why there was a compelling need to proceed in his absence (see United States v Tortora, 464 F2d 1202, cert den 409 US 1063). On April 13, 1977, one week after Bermudez’ disappearance, I held a hearing which we all referred to as a "Bermudez” hearing.
Police Officer Robert Hirschmann testified that he checked various hospitals and mental institutions in Manhattan as well as the morgue and that Bermudez was not at any of those places. He also went to Bermudez’ apartment and checked with Bermudez’ common-law wife three or four times; spoke to his foster mother and visited various "hang-outs” in the area of the 9th Precinct, all without success. Up to April 13, 1977, no one had heard from Bermudez and there was no evidence that a personal catastrophe had befallen him which would make his failure to return to court involuntary.
Somewhat after the fact, on April 18, 1977, the codefendant, Aurora Hicks, stated in open court that she saw Bermudez in Central Park on Sunday, April 17, and that she had spoken to him.
On the issue of notice that he was on trial, the Assistant District Attorney asked that the court jacket and all its contents be made part of the record. This included the defendant’s prior criminal history which reflected that the defendant had at least three prior arrests for drug related charges. In the instant case, the defendant had appeared in court at least 20 times before absconding. He was not a stranger to the workings of the court.
I am not convinced that the People must show a compelling necessity to proceed in the absence of the defendant. Nevertheless, I find from the evidence that there is such a necessity. Because of the terrifying incident to which they were subjected, some of the witnesses expressed fear of testifying against the defendants; the witnesses to the armed robbery were young female "gays”, highly mobile, whose presence at some future trial could not be assured. Furthermore, this is a multiple defendant case which would entail two trials if there was a severance because the nonabsconding defendant’s *612 speedy trial rights (CPL 30.30) cannot be impaired because of the codefendant’s misconduct (see United States v Tortora, supra, p 1210, n 7). The State should not be put to this expense. After hearing the evidence, I granted the People’s motion to continue the trial. The trial continued with the empanelling of a jury and the taking of evidence in the absence of the defendant, Bermudez. Counsel moved to be relieved and I denied that motion. Thereafter, upon penalty of contempt, I directed counsel to continue his representation until the completion of the trial, and he is doing so. This opinion is written to present the reasons for my decision.
CPL 260.20 is a codification of the Sixth Amendment right which provides that "the accused shall enjoy the right * * * to be confronted with the witnesses against him” (US Const, 6th Amdt; NY Const, art I, § 6). This had been interpreted to mean that a defendant has the right to be present at every stage of the trial against him "inclusive of the empanelling of the jury and the reception of the verdict, and so being scarcely less important to the accused than the right of trial itself’ (Diaz v United States, 223 US 442, 455). The right to be present has been interpreted by our Court of Appeals to include presence at suppression hearings (People v Anderson, 16 NY2d 282; see, also, People v Huggler, 50 AD2d 471).
Basic to the Sixth Amendment right is our abhorrence of secret trials (see People v Thorn, 156 NY 286). This right developed independently of the right to counsel which is a more recent development (see People v Epps, 37 NY2d 343, 348).
While initially in our history a defendant’s presence at trial was considered an absolute jurisdictional prerequisite, by 1911, the Supreme Court of the United States recognized that a defendant can voluntarily waive his presence at a trial (Diaz v United States, 223 US 442, supra). A defendant’s disruptive conduct in a courtroom may constitute such a waiver (Illinois v Allen, 397 US 337). Mr. Justice Douglas, in his dissenting opinion in Tacon v Arizona (410 US 351, 353), noted that "fleeing from the jurisdiction or going into hiding” also constitutes a waiver of the right to be present at trial.
Clearly, when a defendant is in custody, it is the obligation of the custodial authorities to produce the defendant (Diaz v United States, supra, p 456). However, quoting from Falk v United States (15 DC App 446), the Supreme Court of the United States recognized that there is a difference when a *613 defendant is free on bail: " 'It does not seem to us to be consonant with the dictates of common sense that an accused person, being at large upon bail, should be at liberty, whenever he pleased, to withdraw himself from the courts of his country and to break up a trial already commenced. The practical result of such a proposition-, if allowed to be law, would be to prevent any trial whatever until the accused person himself should be pleased to permit it. For by the statute (Rev. Stat. of U.S. Sec. 1015) he is entitled as a matter of right to be enlarged upon bail "in all criminal cases where the offense is not punishable by death;” and, therefore, in all such cases he may by absconding prevent a trial. This would be a travesty of justice which could not be tolerated; and it is not required or justified by any regard for the right of personal liberty. On the contrary, the inevitable result would be to abridge the right of personal liberty by abridging or restricting the right now granted by the statute to be abroad on bail until the verdict is rendered. And this the counsel for the appellant appear candidly to admit. But we do not think that any rule of law or constitutional principle leads us to any conclusion that would be so disastrous as well to the administration of justice as to the true interests of civil liberty”.
"The question is one of broad public policy, whether an accused person, placed upon trial for crime and protected by all the safeguards with which the humanity of our present criminal law sedulously surrounds him, can with impunity defy the processes of that law, paralyze the proceedings of courts and juries and turn them into a solemn farce, and ultimately compel society, for its own safety, to restrict the operation of the principle of personal liberty. Neither in criminal nor in civil cases will the law allow a person to take advantage of his own wrong. And yet this would be precisely what it would do if it permitted an escape from prison, or an absconding from the jurisdiction while at large on bail, during the pendency of a trial before a jury, to operate as a shield.’ ” (Diaz v United States, supra, pp 457-458.)
This same line of reasoning was followed by the Second Circuit Court of Appeals in United States v Tortora (464 F2d 1202, 1208 supra) where the court held: "A defendant who deliberately fails to appear in court does so voluntarily, and thus the important question is whether his absence can be considered a 'knowing’ waiver. We hold that it can. The deliberate absence of a defendant who knows that he stands *614 accused in a criminal case and that the trial will begin on a day certain indicates nothing less than an intention to obstruct the orderly processes of justice. No defendant has a unilateral right to set the time or circumstances under which he will be tried [citations omitted]. When a trial judge designates a date for trial the defendant’s obligation is to appear ready in court on that date. '[T]he right to release before trial is conditioned upon the accused’s giving adequate assurance that he will stand trial and submit to sentence if found guilty.’ Stack v. Boyle, 342 U.S. 1, 4 * * *.”
There is a somewhat parallel development of the law of waiver in New York (see People v La Barbera, 274 NY 339; People v Epps, 37 NY2d 343). While it is clear that the statutory right may be waived, the issue remains whether the defendant knowingly, voluntarily and intelligently relinquished his right to be present at trial (Johnson v Zerbst, 304 US 458, 464).
Waiver itself has two aspects — how does one waive his presence at trial and at what point does such a waiver become effective. Obviously, a waiver can be either express or implied. Where a defendant refuses to leave his cell after a jury has been selected, he was said to have waived his right to be present at trial. (People v Epps, 37 NY2d 343, supra). Coincidentally there are two cases in New York in which a defendant absconded after nine jurors had been sworn and the jury selection and trials through verdict were completed in the defendants’ absence. (People v Aiken, 54 AD2d 937; People v Vega, 80 Misc 2d 59.)
CPL 260.20 itself offers an example of a waiver when it states: "A defendant who conducts himself in so disorderly and disruptive a manner that his trial cannot be carried on with him in the courtroom may be removed from the courtroom if, after he has been warned by the court that he will be removed if he continues such conduct, he continues to engage in such conduct.” This was adopted to codify the decision in Illinois v Allen (397 US 337, supra), but was not intended to limit waiver to that single factual instance (see People v Epps, 37 NY2d 343, supra). A defendant may personally waive his appearance at a hearing (People v Huggler, 50 AD2d 471) and at least during a trial, a defendant may expressly permit testimony to be offered in his absence (Diaz v United States, 223 US 442, supra).
When a defendant fails to return to a courtroom, without *615 explanation, it is permissible to infer that his disappearance was voluntary and reflects a knowing and intelligent waiver of his right to be present in that courtroom. There is a presumption in law that if a person exists, he continues to exist (Richardson, Evidence [10th ed], § 74). The defendant Bermudez was alive and well when he left the courtroom. There is no proof or reason to believe that death or other incapacitating catastrophe befell him which would account for his failure to reappear in court. Until there is proof of a change in Bermudez’ condition, the presumption is that his last known condition continued. I nevertheless conducted a hearing to determine what efforts were made to find the defendant. I found that the District Attorney’s efforts were reasonably thorough; and that if some catastrophe had befallen the defendant between 12 noon and 12:30 on April 6, 1977, in the vicinity of this courthouse, someone in Bermudez’ family, the police department, the local hospitals or the morgue would probably have known about it within a week thereafter. At this hearing, I offered to receive any testimony from Bermudez’ attorney which would tend to indicate that Bermudez’ absence was not a knowing, deliberate, and intelligent act to avoid the trial of this action against him. The attorney refused to testify or offer evidence. I conclude that the defendant’s failure to reappear in court was willful, knowing, and intelligent.
The question remains whether the defendant’s absence is a willful and knowing waiver of his right to be present at trial. In the Federal courts it has been held sufficient for a waiver that a defendant know that a trial would commence on a date certain (United States v Tortora, 464 F2d 1202, cert den 409 US 1063, supra; see, also, Government of Virgin Islands v Brown, 507 F2d 186). In Tortora, the jury selection process had not yet begun, but the defendant knew specifically that it would begin on the date that he failed to return to court. The trial proceeded to conclusion in Tortora’s absence.
In New York, the earliest that a case proceeded after a defendant absented himself was after nine jurors had been sworn (People v Aiken, 54 AD2d 937, supra; People v Vega, 80 Misc 2d 59, supra). Bermudez’ counsel argues that if the right to be present at trial is waivable at all, it can only be waived after a trial has "commenced”, within the meaning of CPL 1.20 (subd 11) which provides that, "A jury trial commences with the selection of the jury and includes all further proceed *616 ings through the rendition of a verdict.” Counsel argues that the definitional section must be read in conjunction with the double jeopardy statute (CPL 40.30, subd 1, par [b]) which states that jeopardy attached when the action, "Proceeds to the trial stage and a jury has been impaneled and sworn”. In other words, he argues that a trial does not start until it reaches that point where jeopardy attaches and inferentially a defendant may absent himself at any time before then without waiving his right to be physically present at trial. As further support of his argument, counsel points to CPL 710.40 (subd 3) which provides in pertinent part that, "When the motion is made before trial, the trial may not be commenced until determination of the motion”. He argues that the trial could not commence until there was a decision on the Wade motion, a motion which was made by the codefendant, Hicks, and therefore that Bermudez did not even have to be in court.
While the Wade motion was made on behalf of Hicks, the record amply reflects that Bermudez joined in the motion and fully participated in the hearing. Only after Bermudez’ disappearance did his attorney argue that Bermudez did not have to be present. Even if Bermudez did not participate in the Wade motion I would not have excused his absence, but that is not the case. Bermudez did join and participate and the record is clear on this point. His attorney cross-examined all of the People’s witnesses, got daily transcripts of their testimony, and the relevant Brady and Rosario material including the witness’ Grand Jury testimony. Indeed, at page 49 of the cross-examination of Detective Urgo during the Wade hearing, counsel stated, "I want to make it clear that I think it is a Brady issue that applies to both of us because Santiago’s testimony is equally damaging to Bermudez.”
With respect to the CPL 710.40 requirement that pretrial motions be decided prior to the commencement of a trial, I find that that requirement exists so that jeopardy does not attach prior to the decision on such a motion thus affecting its appealability, particularly by the People (see, i.e., United States v Wilson, 420 US 332). It has no application to the issue here.
I find the argument that a defendant cannot waive his right to be present at his trial before a complete panel has been sworn is without merit. New York cases have held otherwise (People v Aiken, 54 AD2d 937, supra; People v Vega, 80 Misc 2d 59, supra).
*617 Since the right to be present at trial is waivable, at least in noncapital cases (see People v La Barbera, 274 NY 339, supra), the issue becomes one of notice and understanding of what one is waiving and not the delineation of a particular moment before which a person cannot possibly waive his right to be present at trial (United States v Peterson, 524 F2d 167, 184, cert den 423 US 1088). In Tortora v United States (464 F2d 1202, 1208, supra) the court held that, "A defendant may waive his right to insist that his trial begin only in his presence. When a defendant has pleaded to the charges against him and knows that the trial of the charges is to begin on a day certain, the trial may start in his absence if he deliberately absents himself without some sound reason for remaining away.”
Mr. Justice Douglas, in his dissenting opinion in Tacon v Arizona (410 US 351, 355, supra) points out that there is no difference between a waiver of counsel and a waiver of the right to confrontation. " 'A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver * * * must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.’ Johnson v. Zerbst, 304 U.S. 458, 464.”
Here, the case was moved to trial in the defendant’s presence and his attorney answered, "ready”. Evidence was then taken, albeit at a Wade hearing which was held before the start of jury selection. Each day the case was called for trial in the defendant’s presence and only after hearing overwhelmingly damaging testimony did the defendant abscond. He had been arrested and arraigned on at least three previous occasions and was therefore no stranger to the courts. The defendant knew and understood that the case was on trial and would proceed to jury selection upon the completion of the Wade hearing. He was afforded the opportunity to be present at his trial to completion, but chose to leave. He even heard two of the People’s witnesses testify on direct and cross-examination both by his attorney and by his codefendant’s attorney and had the benefit of all the witnesses’ Brady and Rosario material and daily copies of the witnesses’ testimony before he absconded.
I therefore conclude that the trial in this case started when it was moved to trial and everyone answered ready, that the *618 defendant knew he was on trial and that his presence was required in the courtroom, that he deliberately failed to return to court on April 6 and absented himself thereafter until the present time and that he thereby waived his right to be present at his trial. I also find that there is a compelling necessity to proceed to trial in the defendant’s absence although that has nothing to do with the question of waiver. Should he choose to return prior to the completion of the trial he has every right to return to the courtroom and be personally present at the remainder of the trial. He does not have the right to hinder, delay or prevent the orderly administration of justice by unilaterally determining when his trial will or will not proceed. He was afforded every due process right and his rejection or waiver of those rights does not require the court to shut down. The trial can and will proceed to conclusion in his absence.