■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BRUNCE SMITH, Also Known as BRUCE SMITH, Also Known as NAT SMITH, Also Known as NATHANIEL DICKERSON, Appellant. — Judgment of the Supreme Court, Bronx County (Barry Salman, J.), rendered June 26, 1981, which convicted defendant of criminal possession of a weapon in the second degree, two counts of assault in the second degree and reckless endangerment in

the first degree and sentenced him to concurrent terms of imprisonment of 7½ to 15 years and 3½ to 7 years, is reversed, on the law, and the matter remanded for a new trial.

The facts are fairly and fully stated in the dissenting opinion. In attempting to distinguish the instant situation from that existing in analogous cases (*People v Trendell,* 61 NY2d 728; *People v Parker,* 57 NY2d 136; *People v Walker,* 104 AD2d 759; *People v Rodriguez,* 102 AD2d 769), the dissent has concluded that it was not the purpose of these cases to lay down a per se rule requiring that a defendant who has absented himself without just cause be specifically warned that the trial would proceed without him. According to the dissent, it is sufficient if, on the basis of the facts, it can be inferred that the defendant was possessed of such knowledge. However, the holding in *People v Parker* (*supra*) is clear. Although the Court of Appeals acknowledged therein that the right to be present at one's trial may be waived, it went on to declare that this right is of such fundamental constitutional nature that the validity of any waiver must be measured according to constitutional standards. As the court asserted (at p 141): "In order to effect a voluntary, knowing and intelligent waiver, the defendant must, at a minimum, be informed in some manner of the nature of the right to be present at trial and the consequences of failing to appear for trial (see *Schneckloth v Bustamonte,* 412 US 218, 243-244; *Brady v United States,* 397 US 742, 748). This, of course, in turn requires that defendant simply be aware that trial will proceed even though he or she fails to appear. As noted above, the defendants in *Epps* and *Johnson* were both expressly told that trial would proceed in their absence."

Even where the court has determined that a defendant has waived his right to be present by failing to show up after being advised of the right and the consequences of nonappearance, trial *in absentia* is still not automatically authorized. "Rather, the trial court must exercise its sound discretion upon consideration of all appropriate factors, including the possibility that defendant could be located within a reasonable period of time, the difficulty of rescheduling trial and the chance that evidence will be lost or witnesses will disappear * * *. In most cases the simple expedient of adjournment pending execution of a bench warrant could provide an alternative to trial *in absentia* unless, of course, the prosecution can demonstrate that such a course of action would be totally futile." (*People v Parker, supra,* at p 142; *see also, People v Walker, supra.*) Moreover, the fact pattern involved here is not comparable to that in any of the limited instances in which courts have found a waiver of the right to be

present at trial. (*See, Taylor v United States,* 414 US 17; *United States v Tortora,* 464 F2d 1202, *cert denied sub nom. Santoro v United States,* 409 US 1063; *People v Epps,* 37 NY2d 343, *cert denied* 423 US 999; *People v Johnson,* 37 NY2d 778; *People v Byrnes,* 33 NY2d 343.)

While it is true that the defendant apparently did not decide to absent himself until after he had heard the strength of the People's proof, as presented by the prosecution at the pretrial hearing, the fact remains that "the record before us is devoid of any evidence indicating that defendant was ever apprised or otherwise aware that [his] trial would proceed in [his] absence." (*People v Parker, supra,* at p 141.) In that regard, a defendant's prior contact with the law is hardly an adequate reason to assume a knowledge and understanding of the consequences of nonappearance. To find otherwise would have the effect of establishing one standard for those defendants with a criminal record and another for those without. Yet, if governmental authorities are never relieved from the necessity of having to provide *Miranda* warnings no matter how many times an individual has previously been detained by the police or heard those warnings before, it is difficult to perceive how a waiver of such significant constitutional dimension as the right to be present at one's trial can be inferred from a person's having had prior encounters with the law.

Moreover, the dissent seems to be equating a suppression hearing, which is denoted a "minitrial", with the trial itself, thereby creating a new rule of law that if the defendant absconds during a pretrial hearing, particularly if conducted in the same courtroom in which the trial is scheduled, that is tantamount to his not appearing during trial. No legal authority supports such a proposition. In *People v Parker* (*supra,* at p 141), the Court of Appeals does point out that there are instances in which a waiver may be implied as a matter of law from the circumstances. However, such situations are generally restricted to occasions in which trial has already commenced (*see, Taylor v United States, supra*) or the defendant behaves in an unruly manner during the course of the trial (*see, People v Johnson, supra*). The trial in the present matter had not yet begun and, notwithstanding defendant's previous arrests, there is no indication in the record that he had ever before experienced a trial or at any time been advised of the legal consequences of failing to show up for trial. Thus, the defendant is entitled to have his conviction vacated and the case remanded for a new trial. Concur — Sandler, J. P., Milonas and Ellerin, JJ.

Ross and Bloom, JJ., dissent in a memorandum by Bloom, J., as follows: The basic question submitted for our consideration is

whether, in the circumstances of this case, it was proper to try defendant *in absentia*. We conclude that it was. Accordingly, we would affirm.

Defendant stands convicted of the crimes of criminal possession of a weapon in the second degree, two counts of assault in the second degree and reckless endangerment in the first degree. As a predicate felon, he was sentenced to concurrent terms of imprisonment of 7 years, 6 months to 15 years, and to three terms of 3 years, 6 months to 7 years.

The circumstances leading to this appeal are as follows:

Robert Glenn and defendant were both students at Manhattan Community College. They engaged in a game of cards and defendant lost the sum of $2 to Glenn. Whether defendant refused to pay Glenn or was unable to do so is not indicated. In any event, Glenn was not paid. Some weeks later, on May 28, 1979, the two met again at a playground where Glenn was engaged in a game of basketball. An argument ensued over the $2 debt from defendant to Glenn. As Glenn turned to walk away, defendant hit him over the side of the head with the butt of a gun. Glenn then started to run. Smith fired a number of shots into the playground, wounding Glenn and a bystander, Thaddeus Kempson, who was leaning against the fence watching the basketball game.

Defendant fled the scene, pursued by a number of those who had been watching the game. When the police, who had been summoned, arrived, they were informed that the person who had fired the shots had entered a building located at 386 E. 153rd Street. The police entered the premises and conducted a floor-by-floor search. Defendant was found on the roof of the building. He was arrested, frisked, and informed of his *Miranda* rights. No weapon was recovered. As the officers, Detectives Morse and Netti, left the building, two bystanders, Bernier and Douthept, told them that defendant had fired the shots.

The detectives and the defendant proceeded to the 40th Precinct. Detective Morse testified that while en route to the precinct, defendant denied that he had shot anyone. He told Morse that a "white dude dressed in green from Brooklyn" was the one involved. At the precinct, the detectives learned that the two victims were in the emergency room at Lincoln Hospital and were in a condition to make an identification. Defendant was taken to the hospital where both Glenn and Kempson identified him as the shooter.

Defendant was thereafter indicted and arraigned. The case came up in the Assignment Part on March 11, 1981. When the case was called for assignment to a Trial Part, the prosecutor

answered ready with the understanding that one of the complainants would not be available until the following day. Defense counsel responded by requesting a *Wade-Huntley* hearing (*United States v Wade,* 388 US 218; *People v Huntley,* 15 NY2d 72). Initially, the request was denied on the ground that no formal motion had been made therefor. After discussion with counsel, the court reconsidered its determination and permitted the hearing. For that purpose, it referred the matter to a Trial Part, noting:

"that if we run out of witnesses, they can go today with the selection of the jury, which I assure you, will in no way infringe upon your further right to the continuation of the Wade hearing *after the jury has been selected* * * *

"THE COURT: I am giving the Wade as to the issue of the suggestiveness which Mr. Marlowe has properly raised to me. I ask you to go along *on the question of selecting a jury if you run out of witnesses,* but in no way will that effect [*sic*] your right to the continuity of the Wade hearing during the course of the trial" (emphasis supplied).

Thus, there is no room for doubt but that the trial was to follow immediately upon the conclusion of the hearing or, if the parties ran out of witnesses at the hearing, the trial was to start during the hearing with the balance of the hearing to be conducted during the trial. Defendant, who was present during the Assignment Part proceeding, heard what took place and was, or should have been, aware that the trial would follow immediately upon the conclusion of the hearing. Further indicative that the trial was to follow the hearing is the fact that defense counsel ordered daily copy of the hearing minutes.

After the case arrived in a Trial Part, it was marked "ready for trial" and the hearing commenced. It proceeded for three days. On the fourth day, defendant did not appear. That afternoon the court directed the issuance of a bench warrant. Upon the representation by defense counsel that his client had absented himself on prior occasions, but always returned within a day or two, the court stayed execution of the warrant until the following day. Request was made of defense counsel for defendant's current address. However, he did not divulge it. The court also instructed the prosecutor and Detective Morse to make effort to locate defendant.

When defendant failed to appear the following morning, the court ordered a hearing on the efforts made to locate him. Detective Morse testified that he contacted the Rikers Island Prisoner Information Service and the Bureau of Criminal Identification of the New York City Police Department and was

informed that defendant had not been arrested during the preceding day. He also testified that defendant was not present at any Bronx hospital connected with the Health and Hospitals Corporation, nor with any voluntary hospital located in that borough, nor was his body at the City Morgue. An address given by defendant as his address at the time of a prior arrest was now an abandoned building. Ascertaining the address of defendant's mother, he went to call on her but received no response when he sought entry into her apartment. A phone call to Manhattan Community College elicited the information that the defendant had been dismissed in the fall of 1979 for academic reasons.

The hearing was recessed and Morse was urged by the court to continue his search. When the hearing reconvened, Morse repeated much of his prior testimony and added several hospital morgues to his inquiries, all to no avail. Police Officer Sherman, who had been detailed to visit the apartment of defendant's mother a second time, testified that there was no response to his request for entry.

At the conclusion of the hearing, the Trial Judge made his findings, which incorporated the testimony of Detective Morse, and noted, on the basis of defendant's prior criminal record, that he was not a stranger to the operation of the criminal court system and procedure. He concluded that "defendant wil[l]fully and voluntarily absented himself from the trial and * * * has in fact waived his right to be physically present inasmuch as it appears from the record that the defendant has voluntarily become a fugitive from justice by his own choosing". The *Wade-Huntley* hearing then continued and, at its conclusion, the court rendered its decision. As to the *Wade* hearing, it held that the testimony of Bernier and Douthept, who witnessed the shooting, who chased the defendant into the building located at 386 E. 153rd Street and who identified defendant as the person who fired the shots to the detectives as they led him out of the building, would be admissible. The showup identification made by Kempson at Lincoln Hospital was suppressed on the ground that it was overly suggestive. However, the court held that the impression made by the circumstances was sufficient to justify an in-court identification. As to the *Huntley* hearing, the court refused to suppress the statement made by defendant to Detective Morse. The *Wade-Huntley* hearing was followed by a *Sandoval* hearing (*People v Sandoval*, 34 NY2d 371).

Following the hearings, the results of which are not disputed, a jury was selected and the matter proceeded to trial which resulted in the convictions hereinabove set forth.

I

The very nature of a trial *in absentia* raises questions of constitutional import under both the Federal and State Constitutions (US Const, 5th, 14th Amends; NY Const, art I, § 6). Additionally, statute (CPL 260.20) frowns upon the practice.

The right of a defendant to be present at his trial is fundamental. His presence enables him to confront witnesses and to assist in his own defense (*Taylor v United States,* 414 US 17; *People v Epps,* 37 NY2d 343). Of course, the right, like many other constitutional rights, may be waived. However, " 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights" (*Johnson v Zerbst,* 304 US 458, 464). Since "waiver * * * is [ordinarily] 'an intentional relinquishment or abandonment of a known right or privilege' " (*Taylor v United States,* 414 US 17, 19, *supra; Johnson v Zerbst,* 304 US 458, 465, *supra*), the law mandates "the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused" (*Johnson v Zerbst,* 304 US 458, 465, *supra*).

To support his claim that a reversal of his convictions is mandated, defendant relies on *People v Parker* (57 NY2d 136), *People v Trendell* (61 NY2d 728) and two decisions of this court (*People v Walker,* 104 AD2d 759; *People v Rodriguez,* 102 AD2d 769). However, none of these cases deals with the situation here presented. In *Parker,* defendant's attorney was notified of her trial date. He immediately contacted her and notified her of the date. In reply, she informed him that she was seriously ill, that she might not be able to appear for trial and that she was too ill to meet with counsel prior to trial. She did not appear for trial and the court adjourned the matter. She did not appear on the adjourned date. After a hearing the court found that her absence was voluntary and constituted a waiver of her right to be present at the trial. The Court of Appeals, in reversing, held that the record did not indicate that defendant was ever aware that her trial would proceed in her absence. It concluded that, in the circumstances presented, waiver could not be found as a matter of law.

*Trendell (supra)* involved a situation in which the trial date was rescheduled on notice to the attorney only. On the adjourned date counsel informed the court that he had been unable to contact defendant to notify him of the adjournment. The court *indicated* that it had issued a bench warrant that morning and that the officer delegated to execute the warrant had informed the court that defendant had left both his home and his job a week earlier. It then proceeded to try defendant *in absentia.*

Relying on *Parker* (*supra*) and stating that there was no showing that defendant had, in some manner, been informed that the trial would proceed in his absence, the court held that the judgment could not stand.

In *Rodriguez* (*supra*) the case was called for trial on an adjourned date. Defendant was not present. The court conceded that it did not make any specific direction to defendant that he was required to appear on the adjourned date. The court directed the prosecutor to investigate defendant's absence and adjourned the matter to the following day. A hearing was held at which the court ruled that defendant had voluntarily absented himself. Nevertheless, it adjourned the matter until the next day to give defendant "the benefit of every conceivable doubt". The following day, in defendant's absence, the trial began. We held that inasmuch as it was not clear that defendant was aware of the trial date or that the trial would proceed in his absence, a retrial was necessary.

Finally, in *Walker* (*supra*), the case was marked ready for trial and sent out for trial "forthwith". Defendant, who had been present in the Assignment Part, did not show up in the Trial Part. A hearing was held which resulted in a holding that defendant had voluntarily waived his right to be present. We reversed, holding that defendant was never made aware of the consequences of his failure to attend the trial.

Viewing all of these cases in their context, we do not believe that it was their purpose to lay down a per se rule. We believe that a specific warning to a defendant that the trial would commence or continue if he absented himself without just cause is unnecessary if from the facts adduced it is clearly inferable that a defendant is possessed of such knowledge. There is nothing in these cases to indicate that yet another admonition is required to be added to the catechism of warnings required to be given to a defendant. Rather, we are of the opinion that what must be shown is that defendant knew of his right to be present and that he consciously, intelligently and voluntarily waived that right, including the right to confront the witnesses against him (*Taylor v United States*, 414 US 17, *supra*). The record facts demonstrate that this was here the case. The case was marked ready for trial in the Assignment Part. It was referred to a Trial Part with the understanding that the selection of a jury would commence immediately following the *Wade-Huntley* hearing. In the Trial Part it was again marked ready for trial. Then, in accordance with the agreement reached in the Assignment Part, a minitrial — the *Wade-Huntley* hearing — was begun. After defendant had heard virtually all of the prosecution's proof, and

had had the opportunity to evaluate it, he concluded, in accord with the old children's rhyme, that "he who fights and runs away may live to fight another day". That defendant knew and understood the consequences of his act is readily inferable from his prior contacts with the law. At the age of 18 he had already pleaded guilty to robbery in the third degree arising out of a gunpoint robbery, which charged him with robbery in the first degree, and for which he was sentenced to four years in prison. At the time of his sentence a warrant was outstanding against him for another gunpoint robbery in the first degree. Various misdemeanor charges were either pending or had been dismissed. In contradistinction to *People v Trendell* (61 NY2d 728, *supra*), where defendant, two weeks after his trial *in absentia*, appeared voluntarily for sentence, this defendant was not again brought before the court until 17 months later, after he had been apprehended under a warrant.

In sum, we conclude that here there was "an intentional relinquishment or abandonment of a known right or privilege" (*Johnson v Zerbst,* 304 US 458, 464, *supra*) by the defendant — the right to be present at his trial and to confront the witnesses against him. Accordingly, the trial court was justified in proceeding with his trial in his absence.

II

The subsidiary contention, that the presentence report was inadequate, may be dealt with simply. True, the Probation Department did not have the "benefit" of any input by defendant. It did, however, have defendant's prior probation report, which was supplemented by such information as the Probation Department could obtain. That it could not obtain further information flowed from defendant's fault, not the fault of the Probation Department. Hence, this alleged failure constitutes no basis for vacatur of the sentences imposed.