OPINION OF THE COURT
Renee A. White, J.
On June 2, 1992 the defendant was convicted, after a jury trial, for the crimes of grand larceny in the second degree, two counts of criminal possession of stolen property in the second degree, two counts of criminal possession of a forged instrument in the second degree and money laundering in the second degree. Following the verdict, the People requested that bail be set. The court set bail in the amount of $25,000 and adjourned the matter to July 13, 1992 for sentence. On June 3, 1992 the defendant’s wife, Gloria R. Mosesson, posted the bail and the defendant was released.
On June 5, 1992 the case was advanced, at the request of the People, to conduct a surety hearing pursuant to CPL 520.30 to examine the source of the funds utilized for the bail. At the hearing the defendant called Mrs. Mosesson to testify. On direct examination, Mrs. Mosesson testified that the source of the money was her personal checking and money market accounts at Bank Leumi, and a portion of her son’s bank account over which she had a power of attorney. On cross-examination, the People attempted to elicit information concerning the account of GRM Associates, a corporation. Upon inquiry by the court concerning the basis for such questions, the People disclosed that Mrs. Mosesson was currently the target of a criminal investigation. The court immediately stopped all questioning of the witness and adjourned the surety hearing to June 18, 1992 for the witness to appear with counsel.
On June 18, 1992 the witness, Gloria R. Mosesson, appeared with counsel for the continued surety hearing; however the defendant, Norman Mosesson, failed to appear. The court issued a bench warrant for defendant’s arrest. As a result of the defendant’s failure to appear, the surety hearing was deemed moot.
The prosecutor requested that the court commence a Parker hearing to determine whether the defendant’s absence was voluntary. This would provide the foundation to sentence the *915 defendant in absentia on the sentence date of July 13, 1992 (see, People v Parker, 57 NY2d 136 [1982]).
The prosecutor called the defendant’s wife, Gloria Mosesson, as a witness at the proceeding. After being sworn, the witness stated her full name, address and date of birth. Mrs. Mosesson invoked her Fifth Amendment privilege against self-incrimination in response to all subsequent questions asked by the prosecutor. The court did not compel the witness to answer the questions, but adjourned the hearing to July 7, 1992 to permit the parties to submit briefs.
The issues for this court to determine are: (1) whether the questions asked by the prosecutor were relevant to the underlying purpose of the Parker hearing, namely did the defendant waive his right to be present by knowingly, voluntarily and intelligently absenting himself from the proceeding; and (2) if the questions were relevant, may the witness be compelled to answer the questions even though she asserted her Fifth Amendment privilege.
RELEVANCY ISSUE
The defendant’s right to be present at all material stages in a criminal trial, including sentencing, is fundamental and is protected by both the State and Federal Constitutions (NY Const, art I, § 6; US Const 6th Amend; see also, CPL 260.20, 340.50). However this right may be waived (Diaz v United States, 223 US 442 [1912]; People v Byrnes, 33 NY2d 343 [1974]). It is well established that a waiver of the right to be present at a criminal trial may be inferred from defendant’s conduct (People v Johnson, 37 NY2d 778 [1975] [defendant’s disruptive behavior during trial proceedings sufficient to establish a waiver]; People v Epps, 37 NY2d 343, cert denied 423 US 999 [defendant’s refusal to leave his cell and attend court proceedings, after being present for two days, as part of his participation in an inmate boycott of the courts, sufficient to establish a waiver]).
The validity of the waiver must be tested according to constitutional standards. The main criteria is whether the defendant knowingly, voluntarily, and intelligently relinquished his right to be present (People v Parker, supra).
When a defendant has failed to appear, before a court can continue with the proceedings, the People must demonstrate that the defendant had been advised of his right to be personally present at trial and the consequences of his nonappear *916 anee (People v Parker, supra). However, in circumstances where the defendant’s case has been referred for immediate trial or where the trial actually commenced, the defendant’s subsequent nonappearance indicates a "defiance of law” and the right to be present is forfeited notwithstanding the failure to advise the defendant. (People v Sanchez, 65 NY2d 436 [1985].)
At a Parker hearing the defendant’s absence has been held to be voluntary when the People have established that they made efforts to locate the defendant by: (1) contacting Hikers Island Prisoner Information Service and the Bureau of Criminal Identification of New York City Police Department to determine if the defendant was arrested; (2) contacting local hospitals to see if the defendant has been admitted; (3) contacting the City morgue to determine if the defendant has died; (4) visiting defendant’s residence; (5) visiting residences of known family members (see, People v Smith, 111 AD2d 608 [1st Dept 1985], revd 66 NY2d 755 [1985], on remand 117 AD2d 563 [1st Dept 1986], lv denied 67 NY2d 1057 [1986]).
In this case, the prosecutor asked Mrs. Mosesson a total of 38 questions that she refused to answer. Initially the court will address those questions that concern (1) the names, addresses and telephone numbers of the witness’s children and grandchildren; (2) the location of property owned or leased by the defendant, the witness, their businesses, children and grandchildren; and (3) the location of all places visited by the defendant and witness within the past five years.
Clearly these questions would aid the prosecutor in attempting to locate the defendant; however, they are not relevant to the ultimate issue the court must address, namely the knowing, intelligent and voluntary absence of the defendant.
Relevant evidence is evidence which logically proves or tends to prove or to disprove a fact in issue. A fact is relevant to another if its existence proves or tends to prove the existence of another. Evidence is irrelevant when it does not, either by itself or in connection with other facts, tend to establish the existence or nonexistence of a fact in issue. Knowing the names and addresses of the defendant’s children, the location of property in which he or his children may have an interest, or his favorite place to visit, would not in any way tend to establish if the defendant’s failure to appear was voluntary, knowing and intelligent.
A Parker hearing cannot be used as a tool by the prosecutor *917 to find the defendant. Indeed, the People’s own response indicates that the answer to these questions "might reasonably yield leads concerning the voluntariness of defendant’s disappearance.” With respect for the basic separation of powers lodged in the executive, legislative, and judicial branches of our government, this court must not be an instrument of the People. Certainly by permitting such inquiry the court would seriously compromise the separate roles and duties of the court and the prosecuting office by becoming an investigative arm of the Special Prosecutor.
The principles regarding the separation of powers was set forth in Matter of Hassan v Magistrates’ Ct. (20 Misc 2d 509, 511 [Sup Ct, Queens County 1959], appeal dismissed 10 AD2d 908, lv dismissed 8 NY2d 750, cert denied 364 US 844):
"In the field of criminal law, the boundaries of the respective spheres of the three branches of Government are clearly defined. The Legislature makes the law and defines the offense. The executive authority executes and enforces the law. Acting through a District Attorney or the Attorney-General, the charge of violation of law is formulated and the criminal proceeding initiated. It is then for the judiciary to interpret and apply the law in the particular case where the charge is made.
"Each function is separate and distinct. Each branch of Government is burdened with its own responsibility and the judicial branch under ordinary circumstances should not sit in judgment on the discretion lodged in the others.”
For the court to be part of a truly investigative proceeding at the behest of the prosecution would seriously undermine the proper administration of justice. The functions of the court and prosecuting office are entirely distinct and neither branch can usurp the duties of the other.
For all the above reasons, the court finds that these questions are not relevant to the ultimate issue to be determined at a Parker hearing. These questions were solely posed by the prosecutor in an attempt to locate the defendant through the use of the judicial process. Such activity is clearly inappropriate and prohibited. Accordingly, Mrs. Mosesson will not be required to answer questions concerning the names and locations of her children; the location of property owned or leased by herself, her husband, their children or their businesses; or the places she and her husband have recently visited.
*918 The court must next address those questions the prosecutor addressed to Mrs. Mosesson, which concern her recent contacts with her husband and her knowledge as to his present location. The court finds these questions relevant to the Parker hearing, as the answers may shed light on the issues of the defendant’s voluntary, knowing, and intelligent waiver of his right to appear at sentencing (People v Sanchez, supra). Therefore, the court must analyze the witness’s assertion of her Fifth Amendment privilege against self-incrimination.
FIFTH AMENDMENT ISSUE
The Fifth Amendment of the US Constitution as well as article I, § 6 of the New York State Constitution provide that no person "shall * * * be compelled in any criminal case to be a witness against himself’. This privilege has been broadened in scope and extends to any witness, not just a defendant, and covers all judicial proceedings, civil, as well as criminal. (Counselman v Hitchcock, 142 US 547 [1892]; People ex rel. Taylor v Forbes, 143 NY 219 [1894].)
The protection of the privilege is not restricted to those questions that incriminate, nor even to those which tend directly to incriminate the witness. The broad criterion for ascertaining the validity of a claim of privilege is whether the answer might tend to furnish a lead, or form a link in the chain of evidence against the witness. (Hoffman v United States, 341 US 479 [1951]; People ex rel. Taylor v Forbes, supra.) To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question, or an explanation of why it cannot be answered, "might be dangerous because injurious disclosure could result.” (Hoffman v United States, supra, at 487.)
Initially, it is the witness who decides whether the privilege may be properly invoked; however, the ultimate determination rests with the court. The refusal of the witness to answer will be recognized unless he is "clearly contumacious, not acting in good faith but making the claim as a mere pretext to avoid giving non-incriminating answers”. (People v Forbes, supra, at 231.)
This rule as enunciated in the Forbes case (supra) is in accord with the Federal standards. In Hoffman v United States (supra, at 488), the Supreme Court held that before a witness’ claim of privilege may be denied it must be *919 " 'perfectly clear, from a careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answer[s] cannot possibly have such tendency’ to incriminate.”
Clearly, answers to these questions posed by the prosecutor might conceivably implicate the witness in aiding the defendant in defying his duty to appear in court. Those responses could possibly, thereby, provide a link in a potential criminal prosecution for aiding his flight or harboring a fugitive.
The People have appropriately conceded that the witness properly invoked her Fifth Amendment right regarding these questions. Accordingly, the witness is not compelled to answer these questions.