**UNITED STATES of America,**

**v.**

**Nelson HUDSON et al.**

**Crim. A. No. 1926.**

United States District Court,
D. Delaware.

June 9, 1970.

Stanley C. Lowicki of O'Donnell, Hughes & Lowicki, Wilmington, Del., for petitioners.

F. L. Peter Stone, U. S. Atty., and Norman Levine, Asst. U. S. Atty., Wilmington, Del., for the United States.

## MEMORANDUM OPINION

LATCHUM, District Judge.

Nicholas V. Battaglia and Louree R. Battaglia ("Petitioners"), two of the sureties on the bail bond of defendant, Nelson Hudson, have petitioned the Court under Rule 46(f), F.R.Cr.P., to set aside the forfeiture of defendant's bail bond, remit the default judgment entered and exonerate the petitioners.

The facts relevant to this proceeding may be summarized as follows: On No-

vember 14, 1968, Hudson was charged in a five count indictment by the Grand Jury of this district with violations of federal law in connection with an attack upon two FBI agents who at the time were discharging their official duties.[1] After arrest on complaint, Hudson appeared before the Commissioner of this district on October 30, 1968. At that time the Commissioner determined that Hudson's release on his personal recognizance or unsecured bail bond would not reasonably insure his presence, and after considering all available information as required by 18 U.S.C. § 3146(b), the Commissioner set bail with surety in the amount of $20,000.[2] After hearing on December 13, 1968, this Court (Wright, C. J.) denied Hudson's application for a reduction of bail to $10,000.[3] On January 24, 1969, after a hearing on the justification of sureties, the Court approved as sureties on Hudson's bond: the petitioners, Major Saunders, Mary Lee Saunders, Annie M. Hayman, Henry D. Dixon, Margaret Dixon, Benjamin W. Brinkley and Elizabeth Brinkley (Reynolds). The following day the defendant and the named sureties executed a bail bond for $20,000. Petitioners' liability on that bond was limited to $4100.[4]

On February 28, 1969, Senior Judge Layton, who originally had been assigned to try this case, wrote to inform all counsel, including Hudson's Court-appointed counsel,[5] that a pretrial conference was set for 10 a. m., April 11, 1969 and that trial was scheduled to begin on April 15, 1969. Thereafter, Judge Latchum was assigned to try the case and on March 21, 1969, the Court (Latchum, J.) entered an order, mailed to all counsel calling a pretrial conference and scheduling the trial. That order, in part, read: [6]

"1. *Pretrial Conference:* A pretrial conference will be held in this case in Courtroom No. 1, Federal Courthouse, Wilmington, Del. at *10 a. m., April 11, 1969.* All counsel must attend. All defendants must attend unless a written and signed waiver of attendance is filed with the Court on or before *April 4, 1969.* Counsel are directed to notify their respective clients who are at large on bail to attend or to file a waiver as required herein. The Clerk will arrange for the attendance of those defendants who are incarcerated and do not file a written waiver of attendance.

"2. *Trial:* The jury trial of this case will commence on *April 15, 1969 at 10:30 a. m.*"

On March 24, 1969, Hudson signed a written waiver of his right to be present at the pretrial conference; it reads as follows: [7]

"The undersigned defendant hereby waives the right to be present at a pretrial conference to be held in Court Room No. 1, Federal Court House,

---

1. For an extended discussion of the charges, see United States v. Barber, D.C., 296 F.Supp. 795, 297 F.Supp. 917, 919 and 303 F.Supp. 807.

2. Docket No. 34. At the Commissioner's hearing, Hudson stated he would obtain his own counsel. Commissioner's Docket 4, Case 2111.

3. Docket No. 63.

4. Docket No. 119. After hearing on March 24, 1969, the Court denied the government's motion to increase defendant's bail to $30,000. Docket No. 189.

5. Docket No. 56—Andrew B. Kirkpatrick, Jr. was appointed by the Court on De-

cember 4, 1968 to represent Hudson and Mr. Kirkpatrick and his associate Walter Pepperman represented Hudson from that date forward. Hudson at the time of his appearance before the U. S. Commissioner stated he was employing counsel and did not want court-appointed counsel. Because Hudson had not retained counsel by November 5, 1968, the Court appointed Louis J. Finger as his counsel to represent him at a pending pretrial lineup. Docket No. 12.

6. Docket No. 188.

7. Docket No. 198.

Wilmington, Delaware, at 10 a. m. on April 11, 1969.

s/ Nelson Hudson"

"Dated March 24, 1969

The undersigned attorneys and counsellors-at-law represent that prior to the foregoing waiver the above named defendant was fully advised of his right to be present at the pretrial conference in this case and more particularly, his right to be present at every stage of the trial under the provisions of Rule 43 of the Federal Rules of Criminal Procedure, and further represent that, in their opinion, the above waiver by defendant of his right to be present at the pretrial conference is voluntarily and understandingly made, and recommends to the Court that the waiver be approved.

s/ Andrew Kirkpatrick
s/ Walter L. Pepperman, II
3000 du Pont Building
Wilmington, Delaware
Attorneys for Defendant,
Nelson Hudson"

On March 11, 1969, the government moved for a bench warrant for the arrest of Hudson on the showing that Hudson had failed to appear for a hearing in Municipal Court of the City of Wilmington on another charge, that a capias had been issued by that Court, that the Wilmington City Police had been unable to locate Hudson to serve the capias since that date, and that his mother and attorney had stated that he had left his home and had not been seen since about April 6, 1969. A bench warrant accordingly issued.[8]

At the opening of trial on April 15, 1969, the United States Attorney advised the Court that Hudson was not present and that the bench warrant had not been served. Mr. Pepperman, Hudson's lawyer, who was present in court, stated that he had not been in contact with Hudson within the past week, that

he had notified Hudson's sureties as soon as he learned that Hudson was missing, that the sureties did not know where Hudson was and that Hudson's bondsmen, who were in the courtroom, were anxious to know whether Hudson's bail bond would be forfeited.[9] The Government moved for forfeiture of Hudson's bond by written motion on that date on the ground that Hudson had failed to appear for trial.[10]

On April 16, 1969, the Court issued an order upon the sureties to show cause why the Court should not declare a forfeiture of Hudson's bail, enter a default judgment on the bond and authorize execution.[11] The rule was returnable on May 16, 1969, the order further provided:

"2. That the Clerk of this Court forthwith mail to the said defendant [Hudson] and to each of his sureties on said bail bond a certified copy of this show-cause order at their last known addresses as the same appear in the records of this Court."

The Clerk certified that the show-cause order was mailed to Hudson and his sureties on May 16, 1969 at their addresses shown on the bail bond.[12]

A hearing was held on May 16, 1969. The sureties, although they had been immediately notified of defendant's disappearance, had neither produced the defendant for trial nor thereafter surrendered him to the custody of the Marshal. They offered no valid reason why a forfeiture of the bail should not be declared and a default judgment entered for breach of the conditions of the bond i. e. failure of defendant to appear for trial. Accordingly, by order dated May 16, 1969, the bond was declared forfeited, a judgment of default entered, and execution stayed for 90 days. The order also required a copy of the order to be mailed to the defendant and his

---

8. Docket No. 203.

9. Trial Transcript pp. 1–7. This proceeding took place out of the hearing of the jury.

10. Docket No. 210.

11. Docket No. 211.

12. Docket No. 213.

sureties.[13]   An affidavit of the Clerk shows that the order was mailed to Hudson and his sureties on May 16, 1969 at their addresses appearing on the bail bond.[14]

On October 27, 1969, the government applied for a writ of execution against petitioners.[15]   Petitioners paid into court on December 19, 1969, $500 on account of the forfeiture.   The execution writ was returned on December 29, 1969 as "unexecuted as the sale was stayed pursuant to instructions" from the U. S. Attorney.[16]   On January 9, 1970, petitioners filed the petition here under consideration.[17]

■   Petitioners assign several reasons why the forfeiture of Hudson's bail was unlawful.   First, petitioners claim that Hudson was not properly notified of the trial date.   The record in this case shows otherwise.   On March 21, 1969, a Court order for a pretrial conference and trial was issued.   The order set the pretrial conference for April 11, 1969 at 10 a. m. and trial for April 15, 1969 at 10.30 a. m.   The order directed all defendants to attend the pretrial conference unless a written and signed waiver was filed.   The order further directed counsel to notify their respective clients who were at large on bail to either attend or file a waiver. Hudson was notified of the contents of this order by his counsel and on March 24, 1969, Hudson signed a written waiver of attendance at any pretrial conference. Accompanying that statement was a certification by his attorneys that Hudson had been "fully advised of his right to be present" at the conference and "at every stage of the trial."   This order having been brought to Hudson's attention was sufficient and proper notice of the trial time and date and his obligation to be present at the trial.

Second, petitioners contend that even though Hudson failed to appear for trial

on April 15, 1969, after notice, the Court could have proceeded to try him in absentia.   Petitioners' contention is incorrect as a matter of law.   Rule 43, F.R. Cr.P., provides:

"The defendant shall be present at the arraignment, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided in these rules.   In prosecution for offenses not punishable by death, the defendant's voluntary absence *after trial has been commenced in his presence* shall not prevent continuing the trial to and including the return of the verdict.   A corporation may appear by counsel for all purposes.   In prosecutions for offenses punishable by fine or by imprisonment for not more than one year or both, the court, with the written consent of the defendant, may permit arraignment, plea, trial, imposition of sentence in the defendant's absence.   The defendant's presence is not required at a reduction of sentence under Rule 35."   (Emphasis added).

■   The clear implication of the first two sentences of the above-quoted rule is that in noncapital felony cases, presence at *arraignment,* at *commencement* of the trial, and at imposition of *sentence* is mandatory—i. e. defendant has no power of waiver.   Except in capital cases, a defendant may be tried *in absentia* if he absconds or otherwise wilfully makes himself unavailable *after trial has been commenced in his presence.*   Since Hudson was to be tried on felony charges, Rule 43 required him to be present at the commencement of trial. His absence at the time the trial commenced prevented him from being tried *in absentia.*   Even if petitioners' legal position were correct, the possibility that Hudson could be tried *in absentia*

13.  Docket No. 256.

14.  Docket No. 257.

15.  Docket No. 338.

16.  Docket No. 360.

17.  Docket No. 361.

is completely irrelevant to the present issue—the obligation of the sureties under the bond to assure defendant's presence at all stages of the trial.

■■ Third, petitioners' claim that because Hudson was not notified of the show cause order, the forfeiture was improper. This contention is without factual support. A month before the scheduled hearing the Clerk mailed a copy of the show cause order to Hudson at his address shown on the bail bond. This mailing was sufficient notice to Hudson. Cf. Western Surety Co. v. United States, 51 F.2d 470, 472 (C.A. 9, 1931). The Court rejects petitioners' view that in order to forfeit the bond there must be proof that Hudson received actual notice. Hudson had absconded and could not be found before trial. It would be absurd in the extreme to hold that failure to personally serve Hudson with the show cause order operated to relieve his sureties of the very risk they undertook when they executed the bond. The bond in this case is a contract between the sureties and the government providing, if the latter will release the principal from custody, the sureties will undertake to guarantee that the principal will appear personally at any specified time and place. Upon failure of the principal to so appear, the sureties become the absolute debtors of the United States for the amount of the penalty. United States v. Davis, 202 F.2d 621, 625 (C.A. 7, 1953), cert. den. sub. nom. Ferguson v. United States, 345 U.S. 998, 73 S.Ct. 1141, 97 L.Ed. 1404 (1953).

■ Fourth, petitioners contend that the forging of the signature of one of the co-sureties[18] relieves the petitioners of liability. This contention is erroneous. "When the names of one of two or more obligors on a bond, note, or other writing obligatory, has been forged, the supposed co-obligor, though a surety only, and though he signed in the belief that the forged name was genuine, is nevertheless bound, if the payee or obligee accepted the instrument without notice of the forgery." Helms v. Wayne Agricultural Co., 73 Ind. 325 (1881). See also Lombard v. Mayberry, 24 Neb. 674, 40 N.W. 271 (1888); Veazie v. Willis, 6 Gray 90 (Mass.1856); York County M. F. Ins. Co. v. Brooks, 51 Me. 506 (1863). No showing has been made that the government, the obligee of the bail bond, was aware of the forgery. Petitioners had the opportunity and duty to make due investigation of the genuineness of the co-sureties' signatures. Their failure to do so cannot relieve them of their undertaking.

■ Finally, petitioners argue that since the signature of one of the co-sureties, Mrs. Saunders, was forged, she was discharged from liability under the bond and the discharge of one surety discharges all. The bond in this case was not only joint but also several. Where co-sureties are bound severally the discharge of one by operation of law does not discharge the others. According to Section 134 of the Restatement of Security, "Where a surety is discharged in bankruptcy or the creditor's claim against him becomes otherwise unenforceable by operation of law, the co-sureties remain liable to the creditor." Here, even though no claim was enforceable against the co-surety whose name was forged to the bond, the co-sureties remain liable. Particularly is this so where petitioners are severally liable to the extent of $4100.

Having reviewed all of petitioners' contentions and finding them to be without merit, the Court concludes that petitioners' application to set aside the forfeiture, remit the default and exonerate the sureties should be denied. An order will be so entered.

18. On November 12, 1969 the Grand Jury indicted Major Saunders for obtaining an unknown person to forge the signature of his wife, Mary Lee Saunders, on the bail bond in violation of 18 U.S.C. § 1506. The defendant entered a plea of guilty to the charge on April 27, 1970.