**Charles SCOTT, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Supreme Court of Kentucky.

May 26, 1981.

Jack Emory Farley, Public Advocate, Mark A. Posnansky, Asst. Public Advocate, Frankfort, for appellant.

Robert F. Stephens, Atty. Gen., Penny R. Warren, Asst. Atty. Gen., Frankfort, for appellee.

STEPHENSON, Justice.

Charles Scott was tried in Campbell Circuit Court and convicted of second-degree burglary and of being a persistent felony offender in the first degree. He was sentenced to a term of twenty years in the penitentiary. We affirm.

■ Scott asserts that the trial court committed reversible error by commencing the trial in his absence.

On August 19, 1978, at approximately 4:30 a. m., Scott broke into a bar in Newport, Kentucky. The owners, who lived in the building, heard the noise and called the police. When police officers arrived, they

found Scott sitting at a table. Officer Kane testified that when he first entered the bar, Scott demanded that Mrs. Steffen, an owner, be arrested for being open after hours, locking him in, and refusing to give him his change.

To place the case in proper perspective, we begin with events some six months prior to trial. Trial was initially set for November 28, 1978. Scott appeared in court and stated he was not ready for trial. His court-appointed counsel explained he had not received notice of the appointment and trial was rescheduled for December 11, 1978. Scott made a motion on December 7, 1978, for discovery, which was granted, and a motion for change of venue, which was denied after a hearing and entry of findings of fact. Trial was then rescheduled for January 23, 1979. On January 5, 1979, Scott moved for bond reduction, which was denied. On January 23, 1979, the rescheduled trial date, Scott made three motions: (1) to appoint a psychiatrist; (2) to have Judge Diskin vacate the bench; and (3) to dismiss the indictment on the ground that due process had been violated. The third motion was supported by a *pro se* memorandum denying the court's earlier finding that Scott had waived his right to speedy trial. The motion for appointment of a psychiatrist was sustained with further proceedings postponed to permit examination. Following a hearing, the court overruled the motion to dismiss, finding that no constitutional or other rights had been denied, and Judge Diskin, denying prejudice, nonetheless agreed to recuse to avoid any appearance of impropriety. On February 1, 1979, Scott filed a *pro se* motion for bond reduction claiming that he had suffered mental damage from five months in custody, that he was unable to obtain proper evidence for his defense while in custody, and that he "simply can't stand trial fairly at this time and stage of (his) case." The motion was denied after a hearing. A similar *pro se* motion filed February 22, 1979, was subsequently heard and denied in light of an amended indictment to include Count II, persistent felony offender. Trial was set for April 30, 1979. On April 24, 1979, Scott

moved to be placed in a hospital for treatment.

The court held an evidentiary hearing on this motion and Scott's competency to stand trial. Scott's psychologist, Dr. Robert Noelker, and the court-appointed psychiatrist, Dr. Werner Anderson, both stated unequivocally that Scott was competent to stand trial. Dr. Anderson described Scott as wanting "to control the setting and prevent this trial from occurring." Dr. Noelker did not reach this conclusion, but volunteered that he was "manipulative." Scott admitted that he had intentionally cut his wrist about two days prior to his interview with Dr. Noelker. Dr. Anderson stated that in his opinion, Scott's recent drug abuse and the self-inflicted injury were "control devices" and that he was not seriously intent on killing himself.

The trial court found Scott competent to stand trial and set trial for May 16, 1979. The transcript of evidence then reflects that Scott refused to leave the courtroom and, although handcuffed and shackled, he kicked and fought so vigorously that four or five officers were required to forcibly remove him. In a subsequent written motion Scott admitted his conduct was disorderly on that occasion.

On May 16, Scott moved for a continuance stating that his sister, Linda Miller, present as a material witness on April 30, believed trial was continued until May 30 and was currently at an unknown address in Indiana. The court sustained the motion and rescheduled trial for May 30, 1979. Scott's motion for change of venue was overruled on the grounds that no evidence or information was presented to indicate a fair and impartial trial could not be had and that no other good reasons were advanced in support of the motion.

On May 30, 1979, the day of Scott's trial, the trial court was advised by defense counsel that Scott refused to be tried in Campbell County and would not come to court. Sheriff Murphy advised that his office received two anonymous phone calls the night before threatening disruption of the court.

The court, the assistant commonwealth's attorney, Scott's attorney, the sheriff of Campbell County, and various members of his staff moved to the jail to interview Scott. Scott stated that Dr. Noelker had testified he had a mental problem; that he had received no subsequent treatment; that he had no defense against the charges he faced; that he did not want to be tried in Campbell County; and that until he received treatment and his mental problem "straightened out," he felt he should not go to trial. Scott admitted that he knew trial was scheduled for that day and stated he had taken a large quantity of drugs the night before and again the morning of May 30. Two days later in chambers, the third day of Scott's trial, he admitted that he intentionally took the drugs to avoid the trial:

"Q   When did you take the drugs?

"A   Approximately I would say between ten and twelve o'clock that night before.

"Q   Even though you knew your trial was scheduled for the next day?

"A   Yes sir, in protest to it being tried in Campbell County. That's what I had done."

After the interview of Scott at the jail, the trial court returned to chambers to consider Scott's testimony and *pro se* memorandum in support of his motions for change of venue and dismissal of the indictment and to hear further testimony as to whether Scott would be disruptive. The trial court overruled Scott's motions, subject to reconsideration if information developed at trial which would provide any foundation for the change of venue motion. Defense counsel then moved for a continuance due to Scott's alleged state of mind and the absence of witness Linda Miller. The motion was overruled. After hearing additional testimony concerning Scott's propensity to be disruptive and the danger of physical harm to persons in the courtroom, the court concluded Scott should be restrained in an unobtrusive manner if he did in fact come to court.

Upon return from recess, still the first day of Scott's trial, defense counsel and the chief deputy reported that Scott refused to come to court and that he may inflict harm on himself or other if forcibly brought over. The trial court then ordered counsel to advise Scott he would waive his right to be present if he did not appear voluntarily. The following conversation with Scott, the jailer, the defense attorney, and the commonwealth's attorney being present ensued:

"(IN THE JAIL)

"MR. TRANTER: Charlie—Charles—Charlie—come on, Charlie—Charlie—it's time for Court.

"MR. SCOTT: I can't make it. I tried to explain. Go ahead and try the case. I don't have to be there.

"MR. TRANTER: Charlie, the judge has ordered us to come down and tell you that you are to appear for Court and your trial and that in the event you don't come, that he will consider that you waive your right to be present at trial.

"MR. SCOTT: I do—I do.

"MR. HUCK: You do waive your rights, Charlie?

"MR. SCOTT: Yes, I waive my rights.

"MR. HUCK: You do waive your rights?

"MR. SCOTT: Yes.

"MR. TRANTER: Charlie, you realize trial is going to be going on without you?

"MR. SCOTT: If I can straighten up, we'll go to trial tomorrow morning.

"MR. ELBERT: The Judge has ordered we go to trial now.

"MR. SCOTT: I will go tomorrow if I am straightened up. I can't even talk right now."

The court then commenced the trial and conducted the first day with Scott not being present in the courtroom.

On May 31, 1979, the second day of trial, Scott was again absent from the courtroom. There is no evidence in the record concerning the details of Scott's refusal to come to court, just a statement by defense counsel that Scott waived his right to be present.

On June 1, 1979, the third day of trial, Scott was finally present in the courtroom.

There was no evidence in the record concerning Scott's decision to appear in court.

On June 4, 1979, the fourth day of trial, Scott was again present in the courtroom.

On June 5, 1979, fifth and final day of trial, Scott at first refused to be present for the persistent felony offender portion of the trial, insisting that the jury was prejudiced against him because of a newspaper article on the case. In his conversation with defense counsel, Scott said that if this jury hears the case, "I am going to raise some hell in the courtroom." He stated that he had *not* refused to go to court the first two days of trial, but that he had been under the influence of narcotics. Scott was finally convinced to appear in court and he moved for a new jury to be impaneled, which motion was overruled. The jury convicted and this appeal follows.

We have gone into tedious details in the factual narration in order to focus on the assertions by Scott that the trial court was in error in commencing the trial without his presence in the courtroom.

With the above-factual situation as a background showing Scott's attitude, the trial court had a sufficient factual basis to determine that Scott's delaying tactics placed an intolerable burden on the trial court to force his attendance for the reason that a waiver had been made and the further reason that there was a high probability that Scott would attempt to disrupt the trial if forced to attend.

Scott, in support of his assertion, relies on RCr 8.28(1), which provides:

The defendant shall be present at the arraignment, at every stage of the trial including the empaneling of the jury and return of the verdict, and at the imposition of the sentence. The defendant's voluntary absence after the trial has been commenced in his presence shall not prevent proceeding with the trial up to and including the verdict. The defendant may be permitted to remain on bail during the trial.

RCr 8.28 has codified the common law right to be present at criminal proceedings, which has been recognized and preserved in the 6th Amendment to the United States Constitution and Section 11 of the Kentucky Constitution.

Scott readily concedes that voluntary absence after the trial has commenced does not stay the proceeding. RCr 8.28 and see *Collins v. Commonwealth*, Ky., 508 S.W.2d 43 (1974), but he asserts that the right to be present when the trial commences is absolute and it is reversible error to commence the trial unless the defendant is present, and that in any event his so-called "waiver" was not given knowingly and intelligently.

The evidence of guilt here was almost conclusive, Scott had no defense. He readily admitted this, and his answer to this lack was to barrage the trial court with motions and pursue every delaying tactic available. When these delaying tactics ran out, he created a scene in the courtroom. Four or five men were hard put to subdue him and take him from the courtroom. Then came the scenario at the jail when Scott refused to attend the trial. The trial court first decided to shackle Scott and have him brought to the courtroom by force. This first decision was discarded and the trial court concluded that Scott had waived the right to be present and proceeded with the trial. We are of the opinion there was no abuse of discretion in the trial court finding that there was a waiver on Scott's part. Throughout the course of the five-day trial, Scott and his counsel cheerfully waived the right to be present and Scott attended the trial when he so desired.

■ We confine our holding that absence of a defendant at the commencement of the trial can be waived in a situation such as that presented here where Scott was in custody at the jail and subject to the orders of the trial court. It can be argued that the requirement that the defendant be present when the trial commences is jurisdictional and that the requirement avoids trial *in absentia*. Here the answer to a jurisdictional argument is that for this purpose Scott was constructively present, being confined in the jail and readily available.

Here the trial court was faced with a defendant who in all probability would attempt to disrupt the proceedings and thus chose the waiver given by Scott as an alternative to using force to effect his attendance. We cannot fault the trial court in this decision.

Disruption of court proceedings and removal from the courtroom has been held to be a voluntary waiver of the right to be present at the trial. *Illinois v. Allen*, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). This reflects the interest of society in an orderly judicial process and is necessary to prevent the paralysis of criminal proceedings and turning them into a farce. *Allen* does not answer the question about the waiver of right to be present at the commencement of the trial, but it articulates the underlying reasons for taking action to prevent chaos in the criminal justice system. The trial court here on many occasions liberally acceded to the demands made by Scott contained in the many motions filed. It is apparent to us that Scott was playing games with the judicial process. We have considered the other issues raised by Scott and find they do not merit discussion.

Scott received a fair trial. The evidence of guilt was overwhelming. We find no unfair prejudice in the actions of the trial court and the judgment is affirmed.

PALMORE, C. J., and AKER, CLAYTON, STEPHENSON and STERNBERG, JJ., concur.

LUKOWSKY, J., dissents.

STEPHENS, J., not sitting.

LUKOWSKY, Justice, dissenting.

In my view Charlie Scott's absence at the commencement and other critical stages of his trial for a felony not only violates RCr 8.28 and his rights protected by the constitutions of the United States and the Commonwealth, it also offends traditional notions of fair play and substantial justice. Though it is far from established, I will assume that a defendant in custody can waive his right to be present at such a trial

by refusing to attend. However, that waiver must be made by the defendant personally at a hearing in open court and found by the court to have been made voluntarily, intelligently and knowingly. That was not done here. Finally, even though an ineffective waiver may not necessarily warrant reversal in the absence of a showing of prejudice, it is unfathomable that Charlie or any defendant would not be prejudiced by absence during those stages when Charlie was not there, viz., the impaneling and swearing of the jury, the presentation of the prosecution's case in chief, the defense attorney's opening statement, and the initial part of the defense.

A defendant's presence at trial for a felony is unequivocally mandated by RCr 8.28(1), which states: "the defendant shall be present at the arraignment, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of the sentence." Sections 2 and 11 of the Kentucky Constitution and the Sixth and Fourteenth Amendments to the United States Constitution further require a defendant's presence at trial for the protection of his rights to due process of law and confrontation of his accusers. *Powell v. Commonwealth*, Ky., 346 S.W.2d 731 (1961); *Illinois v. Allen*, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). More than a century ago this Court fixed norms of fair play and substantial justice.

"The presence of the accused is not mere form. It is of the very essence of a criminal trial not only that the accused shall be brought face to face with the witnesses against him, but also with his triers. He has a right to be present not only that he may see that nothing is done or omitted which lends to his prejudice, but to have the benefit of whatever influence his presence may exert in his favor."

*Temple v. Commonwealth*, 77 Ky. 769, 771 (1879).

The recognition of the right of a defendant to be present at trial leads me to ask whether that right is waivable. There is authority that a defendant *in custody* does not have the *power* to waive his right to be

present at his criminal trial. *Diaz v. United States*, 223 U.S. 442, 32 S.Ct. 250, 56 L.Ed. 500 (1912) (dictum); *Cross v. United States*, 325 F.2d 629 (D.C.Cir.1963); *Evans v. United States*, 284 F.2d 393 (6th Cir. 1960); *United States v. Hudson*, 313 F.Supp. 422 (D.Del.1970); *Hawaii v. Okumura*, Haw., 570 P.2d 848 (1977). However, there is authority to the contrary. *Powell*, supra; *Boreing v. Beard*, 226 Ky. 47, 10 S.W.2d 447 (1928); *Drope v. Missouri*, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975).

Assuming that a defendant in custody may waive his right to be present at trial, it is necessary to examine the circumstances surrounding his absence to ascertain whether the waiver was effective. Generally, the waiver of a trial-related constitutional right must be made by the defendant personally at a hearing in open court and found by the court to have been knowingly, intelligently and voluntarily. *Boykin v. Alabama*, 395 U.S. 238, ·89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *Carnley v. Cochran*, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962); *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *Hartsock v. Commonwealth*, Ky., 505 S.W.2d 172 (1974). See Rules of Criminal Procedure (U.L.A.) rule 713(b).

There are two situations in which a defendant waives his right to be present, or more accurately forfeits this right, and the court is not required to make a *Boykin*-type inquiry and may proceed with the trial in the defendant's absence. Both of these situations have been suggested here, but in my opinion neither is found in the facts of Charlie Scott's case.

First, a trial may continue after a defendant has been *removed* from the courtroom when his conduct has actually disrupted the trial. *Illinois v. Allen*, supra. *Allen* is not applicable here for two reasons. (A) Charlie Scott, unlike Allen, was never in fact disruptive at trial. (B) Contrary to the Commonwealth's contention, the record indicates that Charlie did not threaten to be disruptive. The hearsay evidence of the sheriff and his deputies might give that impression, but when Charlie was asked *twice by the court* during an interview in

the jail whether he would be disruptive, he said no. After one of these negative answers, Charlie added that going into a courtroom is "like walking in a church for me ... some feeling comes over me that I respect. It is a respectful feeling." Furthermore, the court stated on the record it was not convinced that Charlie would be disruptive and that the case should be tried with him present.

Second, a trial may continue when a defendant voluntarily absents himself. RCr 8.28(1) and its federal counterpart Criminal Rule 43 allow a trial to proceed in a defendant's absence when the defendant voluntarily absents himself after the commencement of the trial. In this situation, for example when a defendant escapes during the trial or does not return after the trial has begun, the trial may proceed and there is no necessity of demonstrating that the defendant knew or had been expressly warned by the trial court that the trial could continue in his absence. *Taylor v. United States*, 414 U.S. 17, 94 S.Ct. 194, 38 L.Ed.2d 174 (1973).

It is another situation entirely when a defendant in custody says that he refuses to appear for trial and the authorities make no effort to bring him to the courtroom. The question is whether such absence works the same forfeiture as actual trial disruption and voluntary absence after the trial begins. I believe that the answer is an emphatic no.

An in-custody defendant's refusal to return to the trial after its commencement has been held not to be voluntary in the sense that a forfeiture resulted, because his refusal to attend trial is not the type of voluntary absence contemplated by the rules. *Cross v. United States*, supra. Additionally, this Court has held that a trial of one who escaped before the trial began and who was absent at its commencement is not valid under a Criminal Code section which authorized completion of the trial when the defendant escaped from custody after the trial commenced. *Canter v. Commonwealth*, 249 Ky. 474, 61 S.W.2d 9 (1933).

Therefore, refusal to attend trial is not a voluntary absence that effects a forfeiture.

Rather, an express waiver of the right to be present at the commencement of trial is required which in turn requires the Court to make a *Boykin*-type inquiry into its voluntariness. This is true even when the basis of the defendant's refusal, e. g., hospitalization because of an attempted suicide, is a result of the defendant's voluntary act. *Drope v. Missouri*, supra. in addition, this Court has specifically said that the waiver of the constitutional right to be present at trial "should be so clear and unequivocal as to indicate conscious intent." *Powell v. Commonwealth*, supra at 734. See *People v. Epps*, 37 N.Y.2d 343, 372 N.Y.S.2d 606, 334 N.E.2d 566 (1975), cert. den. 423 U.S. 999, 96 S.Ct. 430, 46 L.Ed.2d 374 (1975).

Charlie Scott's absence from the first two days of his trial resulted from his refusal to attend while he was in the custody of the Campbell County Jailer. This refusal was based primarily on his self-induced drugged condition.[1] Nevertheless, in light of the foregoing, the trial court was required to determine on the record that Charlie waived his right to be present knowingly, intelligently and voluntarily and so unequivocally as to indicate conscious intent. It did not do so. It interviewed Charlie in jail, but concentrated during the interview on whether Charlie would be disruptive. After deciding he would not be disruptive, it ordered the trial to commence in his presence. Later the Sheriff's deputies told the court that Charlie refused to come and said he would be violently disruptive. At the time the court sent the defense attorney, the Commonwealth Attorney and the court reporter to Charlie's jail cell to determine whether Charlie waived his right to be present at the commencement of trial. At no time did the court make the inquiry into the voluntariness of the waiver. On the second day of the trial the court again failed to talk to Charlie, but rather asked Charlie's attorney whether Charlie waived his right to be present. Consequently, there was no constitutionally effective waiver of Charlie's right to be present at trial.

To those who would raise the spectre of the doctrine of harmless error, I say that no reasonable person could be convinced beyond a reasonable doubt that Charlie's absence at the impaneling and swearing of the jury, the presentation of the prosecution's case in chief, the defense attorney's opening statement and the initial stage of the defense did not contribute to conviction. *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The absence of a defendant at the impaneling of the jury alone has been held prejudicial because of the defendant's inability to assist his counsel. *Commonwealth v. Robichaud*, 358 Mass, 300, 264 N.E.2d 374 (1970). One example from the record of Charlie's case suffices to demonstrate the unfairness of the procedure and the probability of prejudice. During the initial questioning of the prospective jurors the court asked if anyone knew Charlie Scott, the little man who wasn't there. The court might as well have asked them whether they recognized Harvey, the Invisible Rabbit. To my knowledge only Elwood P. Dowd could do that.

Because I am convinced that his substantial rights have been prejudiced, I would reverse Charlie Scott's conviction of second degree burglary and grant a new trial. RCr 9.26. I am not dissuaded from this position by lack of preservation for failure to object to the complained of conduct. *York v. Commonwealth*, Ky., 395 S.W.2d 781 (1965). Charlie's absence from critical stages of his trial, especially at its commencement, is error of such magnitude that it must be considered regardless of its preservation for review. See CR 61.02. A trial must not only be fair but appear to be fair. By our norms the *sine qua non* of a criminal trial is the defendant's presence. *Powell v. Commonwealth*, supra; *Temple v. Commonwealth*, supra; RCr 8.28. consequently, I would act to protect the system which purports to safeguard all people from capri-

1. One can not help but wonder how the controlled substances came into Charlie's posses-

sion while he was confined in one of the government's jails.

cious and arbitrary government action and limit the possibility that the authorities might "railroad" a defendant or conceal their indiscretions or improprieties.[2]