OPINION OF THE COURT
Richard Lee Price, J.
The defendant, Rafael Molina, having failed to appear before this court since his initial arrival on January 3, 1983, the People now move to try Mr. Molina in absentia. Mr. Molina’s counsel opposes this motion, and after a hearing on this matter on January 14, 1983, decision was reserved.
On January 3, 1983, the defendant and his counsel appeared before me.
At the close of this session, defense counsel directed the court’s attention to the defendant’s apparent injuries sustained in an automobile accident over the weekend. The defendant, complaining of nausea, pain, and vomiting, was directed by the court to seek medical attention before the next day’s session.
*888 On January 4, 1983, defense counsel appeared without his client, explaining that Mr. Molina had elected to seek medical attention in the town of his residence, Philadelphia, rather than the more immediate vicinity. Defense counsel spoke with his client who called from Philadelphia later that day and was informed that his client was suffering from “internal bleeding” and had been advised not to make the trip to New York. The People made no motion at this time, and accepted counsel’s representation of his client’s illness as genuine.
The defendant again failed to appear on January 5,1983.
Oh January 6,1983, defense counsel once again asserted Mr. Molina’s illness as a reason for his continued absence.
On January 7, 1983, defense counsel declared that his client had a stomach tumor and must receive an operation.
Later on that day the doctor recalled meeting with him but denied recommending surgery to Mr. Molina.
At the close of this session, a bench warrant was issued.
On January 10, 1983, defense counsel again appeared alone and notified the court that he had spoken with his client over the weekend.
On the morning of January 11, 1983, the first solid evidence of Mr. Molina’s injury and motivation was finally received. The People contacted a surgeon by phone who admitted to having seen the defendant the previous week. Upon examination, the doctor determined that Mr. Molina was suffering from a “mass in his groin”, stating that the condition was apparently the result of an injury and had developed in “the last two weeks.” Upon this doctor’s advice, Mr. Molina was scheduled to have the mass removed at 10:30 a.m. on January 11. The operation was to be performed under local anesthetic, and it was unclear when Mr. Molina might be ready to travel upon its completion. For these reasons, the existing bench warrant was recalled.
On the afternoon of January 11, 1983, the case was recalled. At that time the People stated that Mr. Molina had never shown up for his scheduled operation. A new bench warrant was issued, and the People were given until *889 January 13, 1983, to complete their search and investigation for Mr. Molina.
On January 14,1983, an absentia hearing was held upon the People’s, motion to try Mr. Molina in his absence.
For the motion, the People called a detective-investigator who had been assigned to search for Mr. Molina.
At the close of the hearing oral arguments were made by both sides.
Both the United States Constitution (6th Arndt) and the New York State Constitution (art I, § 6) provide a right to confrontation from which the right to be present at a criminal trial arises. CPL 260.20 codifies this derivative right. This right may, however, be waived, as other constitutional rights may be waived. (Diaz v United States, 223 US 442; People v Byrnes, 33 NY2d 343.)
The most recent and ostensibly controlling case in this area is People v Parker (57 NY2d 136), decided by the Court of Appeals on October 7, 1982. That case reinforced the need for a knowing, intelligent, voluntary waiver of the right to be present at one’s criminal trial, rejecting the contention that a “forfeiture” analysis may be used with respect to a defendant’s absence, as opposed to a waiver analysis.
In Parker (supra), the defendant was notified by her counsel of the date the trial was to begin. On that date the defendant phoned her counsel, stating that she was ill and could not be present. The trial was adjourned but defendant never did appear and never again spoke with her attorney. No bench warrant was issued.
The trial court thereafter held an “absconded defendant” hearing where evidence was received that defendant was not known to be ill. All indications pointed to the fact that the defendant had merely chosen not to appear. The defendant was then tried in absentia and was convicted.
The Court of Appeals reversed, holding that there was no indication that as a matter of law the defendant had voluntarily waived her rights under the Federal and State Constitutions and the CPL. The court stated that the law to be applied was that applicable to waiver, not forfeiture, *890 and the defendant must be informed by the court not only that he or she has a right to be present (or not present) but also of the consequences of that choice, namely, that if he or she voluntarily waives the right to be present, he or she may be tried in absentia.
As I read it, Parker (supra) requires a twofold analysis:
(1) Is the defendant voluntarily absent?, and
(2) Has the defendant knowingly, intelligently, and voluntarily waived the right to be present?
While admitting that there are occasions when a defendant’s conduct may imply a waiver, the existence of a constitutional right requires that the defendant, “at a minimum”, be warned of the consequences of this waiver (People v Parker, supra, p 141). The court rejected the notion that a finding of voluntary absence alone was sufficient, as a matter of law, to imply the existence of a waiver.
The court in Parker (57 NY2d 136, 142, supra) went even further in its recognition of the constitutional status of the right to be present, stating that even upon satisfaction of the voluntariness of both absence and waiver, trial in absentia is not automatic. At that point the trial court must exercise its discretion and consider “all appropriate factors”, including the following:
(1) The possibility that the defendant can be located within a reasonable period of time;
(2) The difficulty of rescheduling the trial; and
(3) The chance that evidence will be lost or witnesses will disappear.
These so-called “policy considerations” only come into play after the initial constitutional requirements are satisfied. The court concluded by noting that the most expedient solution was the bench warrant, “unless, of course, the prosecution can demonstrate that such a course of action would be totally futile” (supra, p 142).
Parker (supra) marked a departure from recent Appellate Division and lower court decisions that appeared to hold that the mere knowledge of the right to be present coupled with an apparently voluntary absence was enough to imply a waiver of the right. (People v Aiken, 54 AD2d *891 937, affd 45 NY2d 394.) This rule was extended to encompass even those cases where the actual trial had not yet begun. (Matter of Whitley v Cioffi, 74 AD2d 230; People v Flores, 78 AD2d 554; People v Thomas, 97 Misc 2d 845; People v Hicks, 90 Misc 2d 609.)
Though failing to specifically refer to the decisions listed above, the court in Parker (supra) did distinguish People v Epps (37 NY2d 343, cert den 423 US 999), and People v Johnson (37 NY2d 778) on the grounds that in those cases the defendant’s conduct in addition to the court’s repeated warnings of the consequences of that conduct was enough to constitute a proper waiver. The court also distinguished Federal cases Taylor v United States (414 US 17), where the defendant “voluntarily absented” himself in the middle of the first day of trial, and United States v Tortora (464 F2d 1202, cert den sub nom. Santoro v United States, 409 US 1063) a multiple defendant case.
The distinction of Taylor (supra) and Tortora (supra) appears odd in light of the court’s insistence on the fulfillment of both prongs of the two-point test, the voluntariness of both absence and waiver. Perhaps Taylor can be better justified by noting that in that case the court was relying on rule 43 of the Federal Rules of Criminal Procedure, which provides that the voluntary absence of a defendant shall not prevent a trial from going forward. That statutory language, in addition to a clearly more lenient Federal standard, and the fact that the jurors had been sworn and a mistrial would result is perhaps the best hook upon which to hang the hat of distinction.
Tortora (supra), on the other hand, can be explained either by attention to its Federal status, or by regard to its multiple defendant status, as mentioned in Parker (57 NY2d 136, supra). Using the Parker analysis, if the court were to find that the defendant was voluntarily absent and had voluntarily waived, either expressly or implicitly, his or her right to be present, then the court might look to the multiple defendant status of the case as a reason to exercise its discretion in favor of trial in absentia.
An analysis of the present case brings this court to the conclusion that neither prong of the Parker test has been met. The evidence submitted regarding the voluntariness *892 of the defendant’s absence is, at best, ambiguous, and the voluntariness of the defendant’s waiver, while there is some evidence that he may have been warned prior to trial of the consequences of his failure to appear, has not been demonstrated to this court’s satisfaction.
VOLUNTARINESS OF ABSENCE
The People argue that while the defendant may at one point have been ill and actively seeking medical attention, he is now actively avoiding his trial and eluding the authorities assigned to bring him back for trial. As evidence of this fact, the People note the defendant’s failure to contact his attorney and his failure to appear in light of his apparent knowledge that the proceedings against him have begun and that he is expected to appear. The People also point out that the defendant did disappear two days before two of the complaining witnesses were to arrive from Puerto Rico, and maintain that the defendant has fled knowing that those witnesses are now here and prepared to testify.
Defense counsel argues in opposition that there is no question that when he was last before this court the defendant was ill. There is also no question that the defendant sought and received some medical attention. The People admit that defendant was suffering from a condition for which he was scheduled to be operated upon. Defense counsel argues that all we know is that defendant was ill, he was to receive an operation, and he did not appear for that operation nor did he appear in court.
To resolve the manifest ambiguity of the situation, the People employed the talents of a detective-investigator. It is clear to this court that while the detective may have followed standard “absconded defendant in anticipation of a hearing to try the defendant in his or her absence” investigating procedure, the procedure and the fruits of that investigation do not satisfy the standard of Parker (57 NY2d 136, supra).
In Parker (supra) the court drew special attention to the fact that no bench warrant had ever been issued for that defendant. Along that line the court stated (p 142) that even if the two-point test was satisfied, the court must still *893 consider “the possibility that [the] defendant could be located within a reasonable period of time”. In this case there is evidence that the detective made numerous efforts to determine where the defendant was not (he was not in the morgue, he was not in a hospital, he was not in jail, et cetera) in order to satisfy the old standard of merely ruling out “catastrophe” and ruling in absentia as the only reasonable alternative, but the detective did not make any real effort to locate the defendant and bring him to the courtroom.
In finding the evidence seeking to establish the voluntariness of the defendant’s absence lacking, this court finds particularly persuasive the fact that although the last place the defendant was supposed to be, according to a conversation with his attorney, was here in The Bronx, no check was ever made in this immediate area. This court cannot rule out the possibility that the defendant has lain ill, or worse, either at a spot on his way to this city or within the very walls of this city.
VOLUNTARINESS OF WAIVER
Under Parker (supra, p 140) “[T]he validity of any waiver including one which could be implied, must be tested according to constitutional standards.” The court (p 141) reads in a “state of mind” requirement, calling for “at a minimum [that the defendant must be] informed * * * of the nature of the right to be present at trial and the consequences of failing to appear for trial”.
The People argue, in line with recent Appellate Division case law, that the defendant, having appeared in this Trial Part one full day and having been told that the trial would continue on the very next day, did by his conduct in failing to appear for trial, implicitly waive his right to be present. In support of this interpretation of defendant’s “knowing” conduct, the People point to the facts that defendant has gone through one trial before (where he was acquitted), has in fact appeared in excess of 20 times for this case, and did execute, arguably knowingly, a jury waiver on the day he did appear before this court. The People make other “public policy” arguments, including the fact that the complaining witnesses are here and were brought here from Puerto Rico at the expense of the People for this trial.
*894 Defense counsel admits that his client was, at least on one occasion, warned by the Judge in the Calendar Part that any failure along the way to appear would result in the defendant’s being tried in his absence.* The defense argues that the existence of this warning alone is insufficient to find that as a matter of law the defendant waived this very important right. Defense counsel argues that while this is one factor to weigh in favor of waiver, other factors militate against it. Chief among these are the fact that this defendant suffered from obvious communication problems (apart from any language difficulties) and the fact that the defendant desired to waive a jury so he might be able to take the stand in his own behalf. Whether that was the reason defendant sought to waive a jury or not, it is likely that in this type of case a defendant would take the stand.
Having weighed the factors indicating and denying waiver, this court finds that this defendant did not knowingly, intelligently, and voluntarily waive his right to be present at trial. I agree that if the defendant is conscious and marginally fit he does realize that he is obligated to be present, but I do not find that this defendant appreciates the consequences of his action in failing to appear, regardless of any earlier warning in another part of the court.
As this case amply illustrates, the old “Hearing for an Absconded Defendant”, wherein the People rule out “catastrophe” as a reasonable alternative, is no longer sufficient. On the issue of voluntariness of absence, the People must still check hospitals, morgues, and jails, but they must do so with a dual purpose, to rule out catastrophe and to locate the defendant. More importantly, the People must check the defendant’s last known address, relatives, friends, and “hangouts” and really try to find the defendant. The right to be present at one’s own criminal trial is an important right. A defendant will not be tried in his absence unless he cannot be found after reasonable efforts to locate him, coupled with the lack of evidence that he is dead or ill, and the trial court has warned him or her of the consequences *895 of failing to appear and has determined that he or she has knowingly, intelligently, and voluntarily waived that right. This is the very least that must be shown.
In satisfaction of the latter part of this test, I plan to give and would recommend the following warning be given upon a defendant’s initial appearance before the trial court:
“I am hereby informing you that you have a right to be present at all proceedings before this court on your indictment. This right exists by virtue of the United States Constitution, the New York State Constitution, and the Criminal Procedure Law" of this State.
“While you have that right, you also have the right to waive that right if you so desire. If you waive that right, either by informing this court personally that you have no desire to be present, or by voluntarily failing to appear after you have received this warning, this court will proceed with this trial on your indictment in your absence.
“I repeat, if you fail to appear for any proceeding duly scheduled and noticed to you and are thereafter continually absent, you will be tried, and if convicted, sentenced in your absence.
“Do you understand this?”
I would further recommend that the Legislature of this Empire State codify the requirements and warnings and procedure to be followed before a trial in absentia be ordered.
This motion is denied.

 Justice William Kapblman, the Administrative Judge of Bronx County Supreme Court, Criminal Term, gives this warning as a general practice.